UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

PEGGY A. WILEMAN

       Plaintiff,

-vs-                                                                 Case No:17-cv-531

SCHOOL DISTRICT OF JANESVILLE,
JESSICA GRANDT-TURKE, in her individual and official capacity,
and STEPHEN D. SPERRY, in his individual and official capacity.

       Defendants.

---

## COMPLAINT

---

This is a civil action alleging deprivation of plaintiff Peggy Wileman's rights under the Americans with Disabilities Act, *42 U.S.C. § 12203, et seq.*, as amended by the ADA Amendments Act of 2008 ("ADAAA") and *42 U.S.C. § 1983*. Specifically, Ms. Wileman alleges that defendant School District of Janesville ("Janesville") and the individual defendants Jessica Grandt-Turke and Steven Sperry, failed to reasonably accommodate her known disabilities, adversely affected the terms and conditions of her employment because of and based on her disabilities, and terminated her employment because of and based on her disabilities and needs for accommodations.

## I.  PARTIES

1. Plaintiff Peggy A. Wileman is an adult resident of the State of Wisconsin currently residing at 303 Home Park Avenue, Janesville, Wisconsin

53545. Ms. Wileman suffers from severe anxiety, depression, and panic disorder, which have caused nervous breakdowns and other mental health limitations and for which she has been hospitalized and received medical treatment. At all times relevant to this Complaint, defendant was aware of plaintiff's medical conditions.

2. Defendant School District of Janesville ("District") is a public school system in the State of Wisconsin whose primary business address is 527 South Franklin Street, Janesville, Wisconsin 53548-4779. Defendant is an employer within the meaning of the ADAAA.

3. Defendant Jessica Grand-Turke is an adult resident of the State of Wisconsin whose current business address 527 South Franklin Street, Janesville, Wisconsin 53548-4779. All actions alleged to have been undertaken by Ms. Grandt-Turke in this case were undertaken in both her individual capacity and her official capacity as Principal of Harrison Elementary in Janesville, Wisconsin.

4. Defendant Stephen D. Sperry, Ed.D., is an adult resident of the State of Wisconsin whose current business address is 527 South Franklin Street, Janesville, Wisconsin 53548-4779. All actions alleged to have been undertaken by Dr. Sperry in this case were undertaken in both his individual capacity and his official capacity as Director of Human Resources and Administrative Services for the School District of Janesville.

## II.  JURISDICTION AND VENUE

5. This court has subject matter jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331. Venue is appropriate in this district under 28 U.S.C. § 1391 in that a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this district.

## III.  FACTUAL ALLEGATIONS

6. Plaintiff began working for the defendant as a grammar school teacher at Harrison Elementary ("Harrison") during the 1995-1996 academic school year after having served as a substitute teacher at other district schools for the defendant during the previous two years.

7. As a full-time employee of defendant, plaintiff was eligible for and received benefits that included medical and dental insurance, short-term disability insurance, life insurance, and participation in defendant's retirement savings, or 401(k), plan.

8. In 1991, plaintiff obtained her State of Wisconsin Department of Public Instruction License to teach first through sixth grade and at all times relevant to this Complaint, she was qualified to teach elementary education for defendant District.

9. For the first 17 years of plaintiff's teaching career, she taught a third grade classroom. Then, in the Spring of 2012, without consultation and not by her own choosing, plaintiff was notified that she would be transferred to a first

grade classroom by Principal Jessica Grandt-Turke. Plaintiff's third grade classroom was given to a first year teacher.

10-. Throughout the plaintiff's employment with the defendant District, she met or exceeded all reasonable and legitimate performance expectations.

11. Also in the Spring of 2012, on or about May 24, 2012, Plaintiff was notified by Ms. Grandt-Turke that she was being placed on the District's Supervision and Evaluation plan, based on alleged performance problems during the 2011-2012 school year. This was the first time in plaintiff's career with the defendant that she was disciplined for alleged performance problems.

12. The alleged performance problems were not legitimate or reasonable concerns, but were instead arbitrary and capricious allegations motivated by and based upon plaintiff's disabilities and disabilities-related absences during the previous years.

13. The plan included, among other requirements, "backward design" lesson plans, which required considerable efforts by plaintiff to complete during non-work and weekend hours. Plaintiff also was required to turn in week-in-advance lesson plans every Monday by 8:30 AM, a requirement not made of any other teacher at Harrison. These requirements were not made upon other Harrison teachers.

14. The plan was not reasonably based on legitimate concerns, but instead was arbitrary and capricious and singled the plaintiff out for differential treatment, which was motivated by and based on her disabilities. This

harassment and differential treatment in the terms and conditions of her employment continued for the duration of plaintiff's employment with defendant District and was done under the direction of and/or with the approval of all defendants.

15. During the 2012-2013, plaintiff's classroom had an unusual number of behaviorally challenging students. Plaintiff requested the assistance of a full-time Aide in her classroom, but was denied. At least one, and on information and belief, both of the other two first grade teachers had full-time Aides in their respective classrooms.

16. As a result of the District Supervision and Evaluation plan, plaintiff was under near constant evaluation and scrutiny from Ms. Grandt-Turke, much of which occurred without prior notice to her and caused considerable stress and anxiety in addition to the stress and anxiety of her challenging classroom.

17. In September 2012, plaintiff began a medical leave of absence due to depression and anxiety, a leave for which she submitted the requisite FMLA paperwork and that was approved by the defendant. Her medical leave lasted until January 28, 2013.

18. In May 2013, even after a very positive review of plaintiff's performance during the 2012-2013 school year, Ms. Grandt-Turke extended the Supervision and Evaluation plan continued into the 2013-2014 school year. The decision to do so was not motivated by or based on any reasonable or legitimate

performance concerns, but was instead was arbitrary and capricious and was motivated by and based on her disabilities.

19. In early November 2013, Ms. Grandt-Turke conducted a formal evaluation and review of the plaintiff, in which she noted several alleged deficiencies.

20. Shortly thereafter, the plaintiff, who did not agree with Ms. Grandt-Turke's criticisms of her performance and was very concerned about her job security and believed Ms. Grandt-Turke was harassing her and making decisions based on her disabilities rather than her actual performance, suffered a panic attack, for which she was briefly hospitalized and missed a day of work. Thereafter, plaintiff was written up by Ms. Grandt-Turke for missing the day of work, despite providing a medical excuse for her absence.

21. On November 21, 2013, shortly after plaintiff's missed day of work due to her panic attack, Ms. Grandt-Turke notified plaintiff that the Supervision and Evaluation plan would be extended through the remainder of the 2013-2014 school year. In the notice to plaintiff, Ms. Grandt-Turke stated that "continued performance issues (on your part) will lead to additional disciplinary action up to and including a recommendation of termination of employment with the School District of Janesville."

22. These criticisms from Ms. Grandt-Turke were not motivated by or based on any legitimate or reasonable evaluation of plaintiff's actual

performance, but were instead arbitrary and capricious and motivated by and based on her disabilities.

23. A few weeks later, after no additional observations or evaluations had been conducted on plaintiff's performance, on December 9, 2013, Ms. Grandt-Turke submitted a recommendation to Defendant Sperry that plaintiff be non-renewed at the end of the 2013-2014 school year.

24. This recommendation was not based on any new information gathered by Ms. Grandt-Turke after her November 21, 2013 letter to the plaintiff, which notified the plaintiff that the Supervision and Evaluation plan would be extended, rather than institute the more serious remedial assistance plan called for under the defendant District's policies for discipline and performance improvement. Instead it was arbitrary and capricious and motivated by and based on plaintiff's disabilities.

25. During Ms. Grandt-Turke's tenure, as of March 2017, plaintiff is the only teacher that Ms. Grandt-Turke recommended be non-renewed for alleged performance-based reasons.

26. In less than one week during mid-January 2014, plaintiff was formally observed on short or no notice on at least three occasions. Thereafter, on or about January 31, 2014, plaintiff was summoned to a meeting with several of defendant's management personnel, including Ms. Grandt-Turke, and informed that she would be placed on a formal remedial assistance plan with the threat of termination if she was unsuccessful in the plan.

27. The decision to place the plaintiff on a remedial assistance plan was arbitrary and capricious and not motivated by or based on any legitimate or reasonable evaluation of the plaintiff's performance, but instead was motivated by and based on her disabilities.

28. Plaintiff left the meeting in tears and returned home, where she suffered a severe anxiety and panic attack, which continued throughout the weekend.

29. On February 3, 2014, due to the severe anxiety and panic she was experiencing, plaintiff notified defendant that she needed to utilize sick days for February 3 and 4, 2014, hoping to recuperate enough to return to her classroom that week.

30. On the evening of February 3, 2014, Ms. Grandt-Turke emailed plaintiff, telling her, among other things that her "sub plans for today were unacceptable."

31. On February 4, 2014, plaintiff's husband contacted Ms. Grandt-Turke and advised her that the plaintiff's doctor had placed her on sick leave due to a nervous breakdown caused by Ms. Grandt-Turke.

32. On the same day, plaintiff's husband requested paperwork for the purposes of plaintiff applying for workers compensation benefits.

33. As of February 5, 2014, a long-term substitute for the plaintiff's classroom had been secured by the defendants, a substitute teacher who was prepared to continue filling in for the plaintiff for as long as she was needed.

34. On February 6, 2014, Ms. Christine Carlson, the defendant District's Benefit Specialist, emailed the plaintiff the requested workers compensation paperwork.

35. As of February 6, 2014, Ms. Grandt-Turke was aware that the plaintiff would need to be off work for an undetermined amount of time and that a long-term substitute teacher had been secured to fill in for her absence.

36. On February 17, 2014, Ms. Carlson mailed to the plaintiff a second set of workers compensation documents along with documents required to request a leave of absence under the FMLA. She advised the plaintiff that the documents, whether applying for workers compensation or FMLA leave, needed to be completed and returned by February 24, 2013.

37. On February 21, 2014, plaintiff's husband notified Ms. Carlson by email that plaintiff would be applying for FMLA leave and that plaintiff's portion of the FMLA request would be completed and returned as soon as possible and that plaintiff's physician's portion would hopefully be completed and returned by February 28, 2014.

38. Within approximately 10 minutes, Ms. Carlson acknowledged plaintiff's husband's email, by reply email, and the fact that the plaintiff would be requesting FMLA.

39. After some electronic difficulties with the FMLA paperwork, and some scheduling difficulties with her physician, plaintiff provided the completed FMLA paperwork to the defendant on March 7, 2014. Specifically, the completed

9

U.S. Department of Labor's Certification of Health Care Provider for Employee's Serious Health Condition form indicated that the plaintiff suffered from anxiety and depressed mood, which made her unable to perform any of her job functions in a hostile work environment. The form was completed and signed by the plaintiff's treating Psychiatrist.

40. On March 12, 2014, plaintiff received a letter from Ms. Carlson, sent via certified mail, stating that the defendant could not approve her FMLA request due to allegedly "insufficient documentation." Specifically, Ms. Carlson stated that her physician did not identify what medical condition was causing her need for a leave of absence or what job functions she was unable to perform. The letter further instructed plaintiff that she had two options – either have her physician provide fully completed documents by the morning of March 14, 2014 or return to work on March 17, 2014.

41. This instruction was not legitimately based on any "insufficiency" in plaintiff's FMLA request, because the certification form clearly contained the information that Ms. Carlson stated was missing. Indeed, the only information missing from the form was Section I, the section for completion by the Employer, itself.

42. Other than this instruction to the plaintiff, the defendant took no other action to discover what accommodations that the plaintiff might need, or otherwise engaged in any dialogue with the plaintiff or her physician regarding the plaintiff's conditions or needs for accommodation.

43. The denial of plaintiff's FMLA request was arbitrary and capricious and was based on and motivated by her disabilities and defendants' desire to remove a disabled employee rather than accommodate her with a non-hostile work environment or temporarily tolerate a medically-related absence.

44. With the accommodation of FMLA leave and a non-hostile work environment, plaintiff was capable of performing every aspect of her job, as evidenced by her long and successful career with the defendant District.

45. Plaintiff was unable to make contact with her physician on such short notice, a fact her husband informed the defendant of via voicemail to Ms. Carlson after receiving the letter.  He also indicated that they were making efforts to schedule an appointment with her physician and that they would provide whatever additional information they could as soon as they could, but that plaintiff was in no condition to return to work, per her physician.

46. Consistent with all prior communications between the plaintiff and the defendants since she began her leave on February 3, 2014, plaintiff did not report to work on March 17, 2014 because her health conditions prevented her from being able to do so.

47. On March 18, 2014, via certified mail from Defendant Sperry, the defendant terminated plaintiff's employment as a grammar school teacher for alleged "job abandonment."

48. Plaintiff did not abandon her job nor did she wish to end her career as an elementary school teacher, a fate that was inevitable with a termination for "job abandonment."

49. Defendants knew that plaintiff did not abandon her job, but instead was on leave due to health-related problems; her termination was the conclusion of defendant Grandt-Turke's ongoing harassment and discrimination, motivated by and based on her desire to remove a disabled employee rather than accommodate her.

50. At the time of her termination, plaintiff's classroom was being taught by the same long-term substitute who had been secured as of February 5, 2014 and who had given the defendant no indication that she could not continue to substitute teach for the plaintiff for the foreseeable future. On information and belief, this individual taught the plaintiff's first grade classroom for the remainder of the 2013-2014 school year and was hired on a permanent basis for the following year and remains a teacher for the defendant.

51. The plaintiff's temporary absence during February and March 2014 caused the defendants no financial or other hardship.

## IV. PROCEDURAL REQUIREMENTS

52. Plaintiff complied with all procedural requirements for this lawsuit under the ADAAA. She filed timely complaints with the Equal Employment Opportunities Commission and the Wisconsin Equal Rights Division alleging that the defendant violated the ADAAA's prohibition against discrimination.

This action is being filed within 90 days of plaintiff's receipt of the notice of right to sue issued by the EEOC on April 12, 2017 and received by the plaintiff on April 14, 2017.

## V.  FIRST CAUSE OF ACTION

53. For a first cause of action against defendant District, plaintiff re-alleges and incorporates all of the preceding paragraphs as though set forth fully herein.

54. By engaging in the conduct described above, including without limitation disciplining, not accommodating, and ultimately terminating the plaintiff because of and based on her disabilities, defendant violated plaintiff's rights and discriminated against her in violation of the ADAAA.

55. As a direct result of defendant's unlawful conduct plaintiff has suffered and will continue to suffer damages including loss of employment opportunities, loss of income and benefits, emotional distress, psychological injuries and other pecuniary and non-pecuniary losses.

## VI.  SECOND CAUSE OF ACTION

56. For a second cause of action against the defendants Grandt-Turke and Sperry under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, plaintiff realleges each of the preceding paragraphs as though set forth herein.

57. In engaging in the conduct described in the preceding paragraphs, including but not limited to disciplining, not accommodating and ultimately

terminating the plaintiff, defendants treated plaintiff in an arbitrary and capricious manner and discriminated against her because of and based on her disabilities in violation of her right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

58. The defendants' conduct as described above caused plaintiff substantial damages, including but not necessarily limited to front and back wage and benefit loss, loss of earning capacity, severe emotional distress, loss of reputation and humiliation and embarrassment. The plaintiff will continue to suffer these damages in the future.

## VII.  CAUSE OF ACTION – PUNITIVE DAMAGES

59. The defendants' conduct as described above was willful, malicious and intentional and/or undertaken in reckless disregard of plaintiff's civil rights thereby entitling plaintiff to an award of punitive damages against each of the individual defendants in his or her individual capacity.

## VIII.  JURY DEMAND

WHEREFORE, plaintiff demands a trial by jury on all of her claims and relief as follows:

A. Income and benefits, both past and future;

B. Reinstatement;

C. Compensatory damages for emotional distress and psychological injury and loss of reputation;

D. Punitive damages;

E.   A finding of unlawful discrimination;

F.   An order directing defendant to refrain from future discriminatory conduct;

G.   Reasonable attorney fees and costs; and

H.   Any other relief the Court may deem just and proper

Dated at Milwaukee, Wisconsin this 11th day of July 2017.

Respectfully submitted:

FOX & FOX, S.C.

s/ Peter J. Fox
Peter J. Fox
111 E. Wisconsin Ave., Suite 1925
Milwaukee, WI 53202
T: 414-326-3260
F: 414-224-1411
124 W. Broadway
Monona, WI 53716
E: pfox@foxquick.com
State Bar No. 1037925