IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PEGGY A. WILEMAN,

                Plaintiff,

v.

SCHOOL DISTRICT OF JANESVILLE,
JESSICA GRANDT-TURKE, and
STEPHEN D. SPERRY,

                Defendants.

OPINION & ORDER

17-cv-531-jdp

---

Plaintiff Peggy A. Wileman used to teach at Harrison Elementary School in Janesville, Wisconsin. She suffered from anxiety, depression, and panic disorder that sometimes caused her to miss work. She alleges that defendants have discriminated against her by disciplining her, placing her under burdensome supervision, and ultimately terminating her employment. Wileman sues the School District of Janesville, her former employer, and two individuals: defendants Jessica Grandt-Turke, a former principal at Harrison Elementary; and Stephen D. Sperry, a former director of human resources. Wileman asserts claims under the Equal Protection Clause of the Fourteenth Amendment against Sperry and Grandt-Turke, in their individual and official capacities, and claims under the Americans with Disabilities Act of 1990 (ADA) against the District.

Now before the court are defendants' motions seeking: (1) dismissal of Wileman's equal protection claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Dkt. 9; (2) judgment on the pleadings on her ADA claims under Rule 12(c), Dkt. 19; and (3) to strike Wileman's request for punitive damages under Rule 12(f), Dkt. 9.

The court will deny defendants' motions for the most part. Wileman's complaint states an ADA claim because she alleges that she could perform the essential functions of her teaching job, but defendants did not reasonably accommodate her need for disability-related time off. Whether she states an equal protection claim is a closer call. That claim is reviewed under a rational-basis standard, and it would be rational for a school administrator to discipline or terminate an employee who regularly missed work, as Wileman did. But the court must give Wileman the benefit of the doubt at the pleading stage: she alleges that she had previously been allowed disability-related time off, but that starting in 2012, her discipline and termination was motivated by irrational prejudice because she was disabled. Because Wileman has stated a viable equal protection claim, the court will not strike her request for punitive damages.

But Wileman does not allege facts that could support equal protection claims against Sperry or Grandt-Turke in their official capacities, which would have to be based on policy-based discrimination. Wileman does not allege that she has been discriminated against on the basis of any policy, so the court will dismiss the official-capacity claims.

ALLEGATIONS OF FACT

The court draws the following allegations from the complaint, Dkt. 1, and accepts them as true for the purposes of deciding defendants' 12(b)(6) motion. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court may consider the District's answer for the Rule 12(c) motion, *see Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013), but in this case the answer contains no additional facts that would affect the pending motions.

Wileman worked at Harrison Elementary as a teacher from 1995 to 2014. Despite her anxiety, depression, and panic disorder, she met or exceeded all performance expectations while she taught at Harrison Elementary. This case arises from the events that began in 2012 when Wileman had 17 years of teaching experience.

In May 2012, Grandt-Turke notified Wileman that defendants would place her on the District's supervision and evaluation plan based on unspecified performance issues; Wileman alleges that the decision to place her on the plan was motivated by her previous absences caused by her conditions. The plan required Wileman to work after the normal work hours during the week and on the weekends. It also required her to submit her lesson plans in one week in advance for review. No other teacher at Harrison Elementary was subjected to these requirements.

From September 2012 to January 2013, Wileman went on an approved leave of absence because of her anxiety and depression. She returned from her leave and received a positive performance review for the 2012–2013 school year despite her prolonged absence. Dkt. 1, ¶ 18. But in May 2013, Grandt-Turke extended Wileman's supervision and evaluation plan into the 2013–2014 school year anyway.

In November 2013, Grandt-Turke spoke to Wileman about unspecified performance issues that Wileman alleges were unrelated to her actual performance. This encounter with Grandt-Turke caused Wileman to have a panic attack, which led to her hospitalization and missing a day of work. Wileman was then "written up" by Grandt-Turke for missing a day of work, even though Wileman had provided a medical excuse for her absence. *Id*. ¶ 21. On November 21, 2013, Grandt-Turke wrote to Wileman that "continued performance issues . . . will lead to additional disciplinary action" including termination. *Id*. A few weeks later, with

no additional evaluation of Wileman's performance after the November 21 letter, Grandt-Turke recommended to Sperry not to renew Wileman's employment at the end of the 2013–2014 school year. Grandt-Turke had not recommended a non-renewal for any other teacher at Harrison Elementary. (The court infers that teachers at Harrison Elementary were subject to an annual renewal process.)

In mid-January 2014, Wileman was observed during her lessons on at least three occasions. On January 31, the District's management personnel, including Grandt-Turke, called Wileman to a meeting and placed her on a "formal remedial assistance plan with the threat of termination if she was unsuccessful in the plan." *Id*. ¶ 26. Wileman left the meeting in tears and suffered a severe panic attack. On February 3, she asked to use her sick days for February 3 and 4. On the same day, Grandt-Turke emailed Wileman that her "sub plans for today were unacceptable." *Id*. ¶ 30. Wileman provided documentation from her physician who stated that Wileman could not perform her job functions in a hostile work environment because of her anxiety and depressed mood. Wileman also submitted paperwork to take a leave under the Family and Medical Leave Act, which defendants denied. Wileman alleges that the denial was motivated by defendants' desire to terminate a disabled employee. Wileman missed work until March 17. The next day, Sperry notified Wileman that the District terminated her employment due to her "job abandonment." *Id.* ¶ 47.

Wileman filed an administrative complaint with the Wisconsin Department of Workforce Development Equal Rights Division (ERD). Wileman received a right to sue letter from the ERD on April 14, 2017, and filed her complaint in this case on July 11, 2017.

ANALYSIS

**A. Defendants' motion to dismiss the equal protection claims**

Wileman contends that Grandt-Turke and Sperry discriminated against her based on her disabilities when they disciplined her by placing her on the supervision and evaluation plan, failed to provide accommodations by denying an FMLA leave and by subjecting her to a hostile work environment, and terminated her employment. Wileman asserts equal protection claims against Grandt-Turke and Sperry both in their individual capacities and official capacities. Defendants move to dismiss both sets of claims under Rule 12(b)(6).

In evaluating a motion to dismiss under Rule 12(b)(6), the question is "simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires only "enough details about the subject-matter of the case to present a story that holds together." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (citation and quotation marks omitted).

1. **Official capacity claims**

An equal protection claim against school administrators in their official capacities requires a constitutional violation stemming from a policy, custom, or their equivalents. *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001). Wileman does not allege that she suffered discrimination because of a policy, custom, or their equivalents. Nor does she attempt to explain how she has otherwise stated an official capacity claim. The court will dismiss Wileman's official capacity claims against Grandt-Turke and Sperry.

### 2. Individual capacity claims

Defendants move to dismiss Wileman's equal protection claims against Grandt-Turke and Sperry in their individual capacities on three grounds: (1) failure to state a claim; (2) qualified immunity; and (3) claim preclusion.

#### a. Failure to state a claim

The Fourteenth Amendment prohibits state actors from denying individuals equal protection of the law. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prevail on an equal protection claim, a plaintiff must establish that a defendant acted with a discriminatory purpose and discriminated against her because of her membership in an identifiable group. *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 755 (N.D. Ill. 2015). Pleading an equal protection claim is not onerous if the discrimination is based on a suspect classification. A plaintiff need not allege a discriminatory purpose in detail, *id.*, or specifically allege a similarly situated individual, *Better Broadview Party v. Walters*, 159 F. Supp. 3d 885, 895 (N.D. Ill. 2016). So for example, even the allegation that "I was turned down for a job because of my race" has been held sufficient to state an equal protection claim. *See Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998), *quoted in Samovsky v. Nordstrom, Inc.*, 619 F. App'x 547, 548 (7th Cir. 2015).[1]

But equal protection claims based on disability require more because the rational basis standard governs Wileman's equal protection claim arising from disability discrimination in

---

[1] Defendants argue that Wileman must allege facts corresponding to each element of an equal protection claim. But "it is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). Prima facie case is an evidentiary standard, not a pleading requirement. *Smith*, 143 F. Supp. 3d at 755.

public employment. *See Erickson v. Bd. of Governors of State Colleges & Univs. for Ne. Ill. Univ.*, 207 F.3d 945, 949 (7th Cir. 2000). Under the rational basis standard, a state's classification of individuals based on disability violates the Constitution if it lacks a rational relationship to a legitimate state interest. *Tennessee v. Lane*, 541 U.S. 509, 522 (2004). This is a heavy burden, as the plaintiff must negate "every conceivable" rational basis that might support the challenged state action. *Turner v. Glickman*, 207 F.3d 419, 424 (7th Cir. 2000). Still, the relationship between the state's action and its interest must be rational, and such a nexus is missing when the state's discrimination against individuals does not advance a legitimate state interest. *See, e.g.*, *Cleburne*, 473 U.S. at 448 (reasoning that a city lacked a rational basis to require a special permit for housing for mentally challenged individuals, who posed no "special threat" to the city's legitimate interests). On a Rule 12(b)(6) motion, the court accepts the plaintiff's allegations and all reasonable inferences as true and applies the deferential standard of the rational basis review to those allegations and inferences. *One Wisconsin Inst., Inc. v. Nichol*, 155 F. Supp. 3d 898, 901 (W.D. Wis. 2015).

Defendants' core argument is that the actions by Grandt-Turke and Sperry were rational and that the Equal Protection Clause does not require them to accommodate Wileman's disability. Wileman's request for accommodation under the ADA demonstrates that their actions were rational, dooming her equal protection claim. Defendants rely chiefly on *Bd. of Trustees of Univ. of Alabama v. Garrett*, in which the Supreme Court held:

> States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. They could quite hardheadedly—and perhaps hardheartedly—hold to job-qualification requirements which do not make allowance for the disabled. If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.

7

531 U.S. 356, 367–68 (2001).

Defendants have a pretty good argument on the merits, and Wileman will likely face an uphill climb to prove her equal protection claim. But it would not be appropriate under Seventh Circuit precedent to dismiss her case at the pleading stage. Some courts outside the Seventh Circuit have interpreted *Garrett* to mean that a plaintiff cannot base an equal protection claim on disability discrimination in the workplace. *See Arce v. Chi. Transit Auth.*, 193 F. Supp. 3d 875, 893 (N.D. Ill. 2016) (surveying case law). But the parties cite no authority that the Seventh Circuit has adopted the same view. Even after *Garrett*, the Seventh Circuit has noted that a plaintiff may assert a *direct* § 1983 claim when her claim arises from a constitutional right, not a statutory one. *See Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 281 (7th Cir. 2003). And the Seventh Circuit has not retracted its view that "[d]isabled individuals, like any class, are protected by the Equal Protection Clause of the Fourteenth Amendment." *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 737–38 (7th Cir. 2000) (citations omitted). District courts within this circuit have concluded that the ADA does not preclude an equal protection claim based on disability discrimination in employment. *See, e.g., Holmes v. Godinez*, 311 F.R.D. 177, 231–32 (N.D. Ill. 2015). So following this circuit's authority, Wileman's equal protection claim is not precluded merely because it is based on workplace discrimination that might also violate the ADA. The question is whether Wileman plausibly alleges that she faced irrational discrimination based on her disability.

Wileman alleges that Grandt-Turke and Sperry placed her on the supervision and evaluation plan in Spring of 2012 because of her disabilities. This was the first time Wileman had been disciplined in 17 years of teaching, even though she had a history of absences due to her disabilities. Wileman need not allege defendants' discriminatory purpose in detail. *See* Fed.

R. Civ. P. 9; *Smith*, 143 F. Supp. 3d at 755. And even though Wileman alleges that Grandt-Turke raised certain performance problems, she alleges that those problems were not legitimate and that she performed well as a teacher. Wileman alleges that no other teacher at Harrison Elementary was placed on the supervision and evaluation plan, although it is not necessary to allege a similarly situated comparator. *Better Broadview Party*, 159 F. Supp. 3d at 895.

Defendants might ultimately have an argument that it was rational to terminate Wileman because she missed too much work. The District has a legitimate interest in making sure that it can provide quality education efficiently, and arranging substitute teachers is expensive and disruptive. But Wileman's complaint addresses this: despite her disabilities, she performed well as a teacher. Even after her medical leave that had lasted from September 2012 to January 2013, Wileman received a "very positive" performance review. Dkt. 1, ¶¶ 17–18. The court could reasonably infer that Wileman's absences were not tolerated because of irrational prejudice, rather than out of a legitimate concern for quality or efficiency. This is a factual question that is not appropriately resolved on the pleadings.

Wileman states equal protection claims against Grandt-Turke and Sperry in their individual capacities.

  b. **Qualified immunity**

Defendants move to dismiss Wileman's equal protection claims under Rule 12(b)(6) on qualified immunity. They argue that "[t]he Complaint does not allege any fact that would allow the Plaintiff to overcome" qualified immunity. Dkt. 11, at 18. A court ordinarily cannot dismiss a complaint on a Rule 12(b)(6) motion relying on an affirmative defense such as qualified immunity, but it can if the complaint and matters subject to judicial notice clearly

show that the plaintiff's claims are barred as a matter of law. *See Ewell v. Toney*, 853 F.3d 911, 918 (7th Cir. 2017) (affirming a Rule 12(b)(6) dismissal on qualified immunity ground).

Qualified immunity defense does not apply if (1) defendants violated a constitutional right and (2) that right was clearly established at the time of the violation so that defendants knew that their conduct was unlawful. *Id.* Wileman has stated equal protection claims against Grandt-Turke and Sperry in their individual capacities; if proven, they have violated Wileman's constitutional right. The law long ago established that a state actor cannot discriminate against an individual based on her disability without a rational basis. *See City of Cleburne*, 473 U.S. at 448; *Stevens*, 210 F.3d at 737–38. The court will not dismiss Wileman's equal protection claims on qualified immunity because defendants' qualified immunity depends on disputed facts.

   c. **Claim preclusion**

Defendants contend that the doctrine of claim preclusion bars Wileman's equal protection claims against Grandt-Turke and Sperry. They argue that Wileman filed her administrative complaint with the ERD, and the ERD "dismissed, with prejudice, claims relating to fact allegations [Wileman] has now attempted to revive in federal court." Dkt. 11, at 23. Issue preclusion is an affirmative defense, and again, granting a Rule 12(b)(6) motion relying on issue preclusion requires that the complaint and matters subject to judicial notice clearly show that the plaintiff's claims are barred. *See Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

A state agency's administrative finding can have a preclusive effect. *Coleman v. Donahoe*, 667 F.3d 835, 853 (7th Cir. 2012). The law of the jurisdiction in which a tribunal issued the order governs the preclusive effect of the tribunal's order. *Id.* Under Wisconsin law, claim preclusion requires (1) an identity between the parties or their privies in the prior and present

suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits. *N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 525 N.W.2d 723, 728 (1995).

Here, the third requirement is not satisfied. The ERD order says:

> The complaint in this matter is hereby dismissed with prejudice with respect to the state claim before the Equal Rights Division. *The dismissal of this claim is without prejudice to any right Complainant has to pursue her federal claim.*

Dkt. 11-2, at 1 (emphasis added). Claim preclusion does not apply here.

## B.  Defendants' motion for judgment on the pleadings on the ADA claims

Wileman asserts ADA claims against the District, alleging that it discriminated against her by disciplining her, failing to provide reasonable accommodations, and terminating her employment. Defendants move for judgment on the pleadings on Wileman's ADA claims under Rule 12(c). Dkt. 19.

A court reviews a Rule 12(c) motion under the same standard that applies to a Rule 12(b)(6) motion, except that it considers all operative pleadings and matters subject to judicial notice. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The complaint must contain facts that support a cognizable legal theory. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

Title I of the ADA governs a claim of disability discrimination in public employment. 42 U.S.C. § 12112(a); *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). To satisfy the pleading requirements for a Title I claim, a plaintiff to allege that: (1) she is disabled; (2) she is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013). An adverse employment action includes, among other things, screening out an individual using qualification standards

not related to her job, failing to make reasonable accommodations for known mental limitations, and terminating employment. *See* 42 U.S.C. § 12112(b).

Here, Wileman states an ADA claim against the District. She alleges that she suffered from anxiety, depression, and panic disorder, conditions that qualify as disabilities if they cause a substantial limitation on a major life activity. *See Cassimy v. Bd. of Educ. of Rockford Pub. Sch., Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006). Wileman alleges that school administrators approved a medical leave for depression and anxiety and that a panic attack caused her to miss work; these allegations support the inference that her conditions caused a substantial limitation on a major life activity. Her 17 years' experience of teaching qualified Wileman to perform her job's essential function: teaching. She did miss six consecutive weeks of work before her termination, and showing up for work is no doubt an important aspect of any occupation. *See Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir.), *petition for cert. filed*, No. 17-1001 (2017). But it is plausible, as noted above, that Wileman was still a good teacher despite her prolonged absences given her positive performance. So Wileman's absence does not necessarily show that she could not perform the essential function of a teacher.

Wileman plausibly alleges that she has suffered adverse employment actions because of her disabilities. The District placed Wileman on the supervision and evaluation plan as a form of discipline when Wileman's disabilities caused her to miss work. When Wileman asked for a medical leave and explained that she needed a leave because of her disabilities, the District denied her request and terminated her employment. These allegations state an ADA claim. *See Gogos*, 737 F.3d at 1172 (reversing the dismissal of an ADA claim when the plaintiff has alleged that after reporting that he would be hospitalized because of vision loss, the employer terminated his employment). The parties may dispute later in the case whether the District

12

took these actions because of Wileman's disabilities, but the reasons behind the District's actions are matters "peculiarly within the knowledge" of the District, so the court will construe the allegations liberally at this point. *See Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (citation omitted). Wileman alleges that defendants had a desire to remove a disabled employee and that even one or two days of medical absences were unacceptable. These allegations are enough under Rule 9(b), which allows a plaintiff to allege a mental state "generally."

Defendants specific arguments are that: (1) Wileman's six-week leave of absence is too long to be a reasonable accommodation; (2) a new supervisor is not a reasonable accommodation; (3) Wileman fails to state a claim for discriminatory discipline because a hostile work environment is not actionable under the ADA; (4) Wileman fails to state a claim for discriminatory discharge because she does not allege that the District denied her requests for accommodations because of her disabilities; and (5) Wileman is not a qualified individual under the ADA given the special role that a teacher has in the lives of her students. The court will briefly address each of these, but mostly these are factual issues that would not be appropriately decided on the pleadings.

First, whether a six-week leave of absence constitutes a reasonable accommodation is an open question. The ADA recognizes job restructuring, part-time work, and modified work schedules as reasonable accommodations. 42 U.S.C. § 12111(9)(B). The Seventh Circuit recently held that if the leave of absence is so long that it makes performing an employee's job impossible, the leave cannot be a reasonable accommodation. *Severson*. 872 F.3d at 481. In *Severson*, a three-month leave was too long. *Id*. at 478, 481. In *Haschmann v. Time Warner Entm't Co.*, a leave up to four weeks was not. 151 F.3d 591, 600–01 (7th Cir. 1998). This case involves Wileman's six-week absence. The court need not decide at this point whether a six-week

13

absence is too long to be a reasonable accommodation. Wileman alleges that the District had approved an even longer leave of absence that had lasted from September 2012 to January 2013, and gave Wileman a positive review after that leave. These allegations make plausible that a six-week absence did not preclude Wileman from doing her job.

Second, Wileman did not ask for a new supervisor; her position is that she should have been allowed to do her job without the burden of the supervision and evaluation plan; Wileman could obtain that relief without being assigned a new supervisor.

Third, Wileman does not assert a hostile environment as a cause of action; her claim is that she asked to be free from burdensome scrutiny and that the request was denied because defendants wanted to remove a disabled employee. And whether she asserts a hostile environment claim under Title VII or the ADA does not matter at the pleading stage anyway. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (citing *Johnson v. Shelby*, 135 S.Ct. 346 (2014) (summarily reversing the dismissal of a complaint for an imperfect statement of a legal theory).

Fourth, Wileman plausibly alleges that defendants discharged her because of her disabilities: she notified the school that she needed to take a medical leave caused by her disabilities and provided documentation from her physician; defendants then terminated her employment. The contemporaneous timing by itself does not establish that Wileman was discharged because she submitted a request for a medical leave, but it is enough at the pleading stage.

Fifth, defendants contend that Wileman is not a qualified individual with a disability given the special role that a teacher has in the lives of her students. They quote the concurring opinion from *Ekstrand v. School District of Somerset* to illustrate this point:

> Teaching is a tough job. . . . I can't imagine that many parents would be too pleased to have their first-graders in a classroom taught by a teacher who, to quote the court's opinion, suffered from "fatigue, anxiety, hypervigilance, tearfulness, racing thoughts, and trouble organizing tasks" plus "inability to concentrate . . . retrieve words, make decisions . . . focus on the needs of her students . . . hypersomnia . . . panic attacks, uncontrollable crying, inability to eat, and thoughts of suicide" in the fall of 2005.

583 F.3d 972, 978 (7th Cir. 2009) (Evans, J., concurring). On remand, the defendants in *Ekstrand* argued that the plaintiff was not a qualified individual, but Judge Crabb rejected this argument, explaining that the plaintiff's qualifications to teach were the question for the jury. No. 08-cv-193, 2010 WL 3123143, at *2 (W.D. Wis. Aug. 6, 2010). The same is true here. The court will not decide at the pleading stage whether Wileman's disabilities precluded her from performing the essential functions of a teacher. Wileman alleges that she taught for 17 years and that she did her job well; the court will accept those allegations as true.

Defendants' motion for judgment on the pleadings is denied.

**C. Defendants' motion to strike the request for punitive damages**

Defendants move to strike Wileman's request for punitive damages under Rule 12(f). Dkt. 9 and Dkt. 11, at 28. They contend that if the court dismisses Wileman's equal protection claims, it must also deny her request for punitive damages. Because the court will not dismiss her equal protection claims, defendants' motion to strike Wileman's request for punitive damages is denied.

ORDER

IT IS ORDERED that:

1. Defendants School District of Janesville, Jessica Grandt-Turke, and Stephen D. Sperry's motion to dismiss for failure to state a claim and to strike the request for punitive damages, Dkt. 9, is GRANTED in part and DENIED in part.

    a. Plaintiff Peggy A. Wileman's equal protection claims against defendants Jessica Grandt-Turke and Stephen D. Sperry in their official capacities are DISMISSED for failure to state a claim.

    b. Defendants' motion, Dkt. 9, is DENIED in all other aspects.

2. Defendants' motion for judgment on the pleadings, Dkt. 19, is DENIED.

Entered March 19, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge